## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| DAVID BREWER, | ) | |
| | ) | No. CV |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | **JURY TRIAL DEMANDED** |
| A Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff David Brewer ("Mr. Brewer") brings this Complaint against Defendant BNSF Railway Company ("BNSF").   In support, Mr. Brewer states and alleges as follows:

### PARTIES

1.      Mr. Brewer resides in Havre, Montana.

2.      At all times material herein, BNSF was and is a Delaware corporation organized and existing as a railroad carrier engaged in interstate commerce.   BNSF maintains and operates a Montana Division office located at 1555 Campus Way, Billings, MT 59102.  Process can be served on BNSF's registered agent: Jeff Hedger 2800 Central Avenue, Suite C, Billings MT 59102-0000.

3.      At all times material herein, Mr. Brewer was an employee of BNSF, having been hired as a Conductor in or around June 2001.

## JURISDICTION AND VENUE

4.      This action arises under a federal statute, Title 49 U.S.C. § 20109(d)(3), and is timely commenced thereunder.  On or about February 19, 2013, Mr. Brewer filed a complaint with the Secretary of Labor alleging that BNSF violated 49 U.S.C. § 20109. More than 210 days have elapsed since Mr. Brewer filed that complaint, the Secretary of Labor has not issued a final decision, and the delay is not due to any bad faith on the part of Mr. Brewer.

5.      Venue is proper in the District of Montana pursuant to 28 U.S.C. § 1391. A substantial part of the events, acts, and/or omissions giving rise to Mr. Brewer claim in this action occurred in this judicial district.  Mr. Brewer resides in this judicial district. And because BNSF conducts business in this judicial district and has sufficient contacts with this judicial district, this Court has personal jurisdiction over BNSF.

## COUNT I: VIOLATION OF 49 U.S.C. § 20109

6.      Each and every preceding paragraph is incorporated herein in its entirety by this reference.

7.      Mr. Brewer engaged in several instances of protected activities. The background of each incident is provided herein for the record.

8.      In May of 2012, Mr. Brewer reported a faulty handrail on a bridge that passes over a stream to BNSF management. On a subsequent trip, Mr. Brewer tripped and grabbed he handrail. Realizing it was still not fixed, he reported it again to BNSF management.

9.      In June of 2012, Mr. Brewer participated in a Town Hall Meeting in which Carl Ice, BNSF's Chief Operating Officer, was speaking. During the question and answer

portion, a BNSF employee's spouse raised safety concerns regarding her husband and other employees being forced to work when they were too tired to complete trips, and not rested enough between trips.

10.     Carl Ice asked the spouse several times what her husband's name was. Each time, the spouse declined to provide his name. After one of these requests, Mr. Brewer spoke up and voiced the same safety concerns as the spouse about working tired and working on little rest.

11.     After the town hall meeting several BNSF management supervisors, including some whom had traveled with Carl Ice, approached Mr. Brewer and asked him for his name and telephone number.

12.     In July of 2012, as a part of his job duties, Mr. Brewer was picking up a cut of cars at the Shelby Yard. When he arrived at the office, the air slip (a necessary form showing that air brakes have been tested and were safe) was not ready, so he went out to begin his work. At some point he was provided an air-slip, although it was not signed by the person who had conducted the initial air-brake test.

13.     Mr. Brewer had previously had a conversation with his supervisor and was told not to air test blocks of cars that had been pretested. Mr. Brewer only agreed to this, provided there was a signed air slip or profile that meets the appropriate qualifications so as to comply with applicable safety rules and regulations.

14.     During the pickup, Mr. Brewer's conductor began pulling the cars when Mr. Brewer realized there were multiple air brakes still fully applied and partially applied to the cars in what he believed to be in violation of BNSF Safety Rules and/or Federal Safety Regulations. At some point, Mr. Brewer also recognized that there were 2 "rear-

end only" cars, including a crane, located in the middle of the pickup, where they shouldn't have been according to BNSF Rules and/or Federal Safety Regulations. These events, taken in connection, raised concerns with Mr. Brewer about whether an air test had been properly conducted.

15.     Mr. Brewer was still walking the cut of trains, releasing handbrakes as he heard them, when his supervisor called on the radio and asked what he was doing. He was told repeatedly to get out of town and was eventually investigated and disciplined for these incidents in which he was trying to comply with safety rules and regulations.

16.     At various times in October 2012, Mr. Brewer completed paperwork after his work shift in the same manner as he had during his previous eleven years with BNSF. Mr. Brewer was told, however, that he was reporting his relieved time and released time for his hours of service incorrectly.

17.     A review of Mr. Brewer's hand-written delay reports shows he understood the difference between relieved and released time, and that the issue arose when transferring the data to the BNSF computer program.

18.     Although he was allegedly coached and counseled on at least two occasions, nobody at BNSF showed Mr. Brewer how to properly change the pre-populated fields in the BNSF computer program to ensure he tied up correctly.

19.     As a result of being disciplined in July 2012 for the walking inspection incident at Shelby Yard, Mr. Brewer was terminated for this alleged failure to properly report hours of service due to incorrect data entry in the BNSF computer program.

20.     Based on the preceding paragraphs, Mr. Brewer engaged in protected activities under the statute, including but not limited to the following:

a.   on or around May 3, 2012, Mr. Brewer lawfully and in good faith told BNSF and Trainmaster Vaughn about a handrail on a bridge that was a hazardous safety condition, *see* 49 U.S.C. § 20109(b)(1)(A), and that he reasonably believed to violate a federal law, rule or regulation on railroad safety.  *See id.* at §§ 20109(a)(1)(C), (a)(2).  Mr. Brewer later complained about the handrail a second time because BNSF had not yet repaired it;

b.   on or around June 7, 2012, Mr. Brewer lawfully and in good faith told BNSF, Carl Ice, and other officials at a town hall meeting that BNSF was forcing employees who were fatigued and/or too tired to work, creating a hazardous safety condition.  *See* 49 U.S.C. § 20109(b)(1)(A);[1]

c.   on or around July 6, 2012, Mr. Brewer told Trainmaster Galland that he was checking to make sure that handbrakes were not applied on cars that were about to be moved in order to prevent a hazardous safety condition.  *See* 49 U.S.C. § 20109(b)(1)(A); and

d.   on or around October 8, 10, 14, and 25, 2012, Mr. Brewer acted in good faith to accurately report hours on duty pursuant to 49 U.S.C. § 21101, *et seq*.  *See* 49 U.S.C. § 20109(a)(7), pursuant to his understanding, past practice, and training.

21.   Defendant BNSF, its officers, employees, contractors, and/or subcontractors did the following to discipline, threaten discipline, suspend, reprimand, place on probation, demote, or in some other way discriminate against and/or take unfavorable personnel action or actions against Mr. Brewer:

---

[1] Mr. Brewer also reported other issues unrelated to safety at this meeting.

a. on or around August 24, 2012, BNSF placed a Level S violation on Mr. Brewer's record, gave him a 30 day record suspension, and a imposed one year review (or probation) period, allegedly because of Mr. Brewer's actions on July 6, 2012;

b. on or around November 1, 2012, BNSF notified Mr. Brewer that he was being investigated for his actions on October 8, 10, 14, and 25, 2012, and BNSF refused to offer him alternative handling, which BNSF offers to other employees in similar circumstances;

c. on or around November 28, 2012, BNSF subjected Mr. Brewer to an investigatory hearing into his actions on October 8, 10, 14, and 25, 2012;

d. on or around December 17, 2012, BNSF terminated Mr. Brewer because of his actions on October 8, 10, 14, and 25, 2012;

e. on or around the time of each of these events, BNSF noted these things on Mr. Brewer's employment record, creating a potential for blacklisting and/or future reprisal or discrimination.

22.    At the time that each of the actions described in the preceding paragraph was taken, BNSF, its officers, employees, contractors, and/or subcontractors who actually made the decision to take each action knew, or constructively knew, that Mr. Brewer had engaged in one or more of the protected activities outlined above.

23.    To the extent that any ultimate decision maker did not know about one or more of Mr. Brewer protected activities when making his or her decision, there was another BNSF officer, employee, contractor, and/or subcontractor who *did* know about Mr. Brewer's protected activity and—while acting within the scope of his, her, or its

authority—provided facts and/or failed to provide exculpatory facts or data to the decision maker or otherwise set the decision in motion while intending, or being substantially certain, that an adverse employment decision against Brewer would be the result.

24.     BNSF, its officers, employees, contractors, and/or subcontractors took those actions to discipline, suspend, reprimand, place on probation, demote, or in some other way discriminate against Mr. Brewer due, in whole or in part, to the fact that he had engaged in one or more of the protected activities outlined above.

25.     The actions that BNSF, its officers, employees, contractors, and/or subcontractors took to discipline, threaten discipline, suspend, reprimand, place on probation, demote, or in some other way discriminate against Mr. Brewer were in violation of 49 U.S.C. § 20109.

### COUNT II: VIOLATION OF MONTANA STATUTE 39-2-703

26.     Brewer incorporates and restates the allegations in Paragraphs 1-25 of this Complaint and restates each of them as if fully pled herein.

27.     To the extent that any investigation(s) referenced in the preceding paragraphs was conducted, the railroad mismanaged, failed to fully investigate and prepare a record prior to discipline, interfered with and/or hindered a full and fair investigation(s) and review of discipline and the factual record allegedly supporting discipline.

28.     BNSF interfered with, obstructed, delayed, withheld and/or destroyed evidence that should have been preserved and made part of the record regarding Brewer prior to discipline.

29.    BNSF interfered with, obstructed, delayed, withheld, and/or spoliated evidence that should have been disclosed in the proceedings before the ALJ during discovery that forced Brewer to remove his case to Federal Court.

30.    The railroad is guilty of negligence, mismanagement, and willful wrongs in its treatment toward Brewer.

31.    As a result of the railroad's conduct, Brewer has suffered loss of income and benefits and emotional distress.

32.    As a result of the actions that BNSF, its officers, employees, contractors, and/or subcontractors took to discipline, threaten discipline, suspend, reprimand, place on probation, demote, or in some other way discriminate against Mr. Brewer, he has suffered damages that include, but are not limited to, the following:

a.  Lost wages;

b.  Mr. Brewer and his spouse were forced to delay his wife's retirement due to financial difficulties stemming from only one income;

c.  Being forced to accept temporary employment doing construction work, resulting in additional anxiety and depression;

d.  Being forced to sell recreational property and automobiles in order to have funds on which to live after his employment was terminated;

e.  Emotional distress, pain, suffering, and loss of enjoyment of life over multiple adverse actions;

f.  Litigation costs such as expenses for deposition recording and transcription, expert consulting and testimony, and other compensable costs;

g.  Reasonable attorneys' fees and costs including but not limited to those associated with pursuing these claims through administrative and/or judicial channels through trial and appeal.

## DAMAGES

33.  Brewer incorporates and restates the allegations in Paragraphs 1-30 of this Complaint and restates each of them as if fully pled herein.

34.  Based on all of the allegations outlined above, Mr. Brewer demands and prays that the Court enter judgment in his favor and against BNSF for all relief necessary to make Mr. Brewer whole including but not limited to relief in the form of:

a.  An award of back pay with interest appropriately compounded;

b.  An award of benefits lost, including but not limited to credit for months of service that Mr. Brewer would have earned with the Railroad Retirement Board absent BNSF's termination of his employment;

c.  An award for emotional distress, pain, suffering, and loss of enjoyment of life;

d.  An award for the sale of the recreational property and automobile;

e.  An award for any and all other compensatory damages including litigation costs and reasonable attorneys' fees to the extent recoverable under law;

f.  An award of any other costs, disbursements, and interest allowed by law and/or equity;

g.  An award for the negative tax consequences of compensatory damages; and

h.  Relief requiring BNSF to:

1. Immediately reinstate Mr. Brewer to his former position of Conductor at the applicable hourly rate, including all rights, seniority, and benefits, including applicable overtime that Mr. Brewer would have enjoyed had he never been discharged;

2. Permanently post notice of employees' rights under the FRSA in BNSF workplaces, as required by OSHA;

3. Train its employees/officers on employees' rights under the FRSA;

4. Post OSHA documents and the Court's Order in all localities for 1 year.

l.   Mr. Brewer also prays for punitive damages not to exceed $250,000.00 under 49 U.S.C. § 20109(e)(3) to punish BNSF for its unlawful activity and to deter BNSF from engaging in such unlawful activity in the future.

## DEMAND FOR TRIAL BY JURY

Mr. Brewer hereby makes and files a written demand for a trial by jury in this action on all issues so triable per 49 U.S.C. § 20109(d)(3), Mont. Stat. §39-2-703, and/or any other controlling authority.

Dated: September 10, 2014                    Respectfully Submitted,

By:s/William G. Jungbauer _____
   William G. Jungbauer
   Yaeger & Jungbauer Barristers, PLC
   2550 University Avenue West, Suite 345N
   Saint Paul, MN 55114
   T: (651) 288-9500
   F: (651) 288-0227
   E: wgjgrp@yjblaw.com

   *Attorneys for Plaintiff David Brewer*