**Benjamin O. Rechtfertig**
**Michelle T. Friend**
**HEDGER FRIEND, P.L.L.C.**
**2800 Central Avenue, Suite C**
**Billings, Montana 59102**
**(406) 896-4100**
**(406) 896-4199 – facsimile**
**brechtfertig@hedgerlaw.com**
**mfriend@hedgerlaw.com**

**Attorneys for BNSF Railway Company**

## IN THE UNITED STATE DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## GREAT FALLS DIVISION

| | | |
|---|---|---|
| **DAVID BREWER,** | ) | **Cause No. CV-14-65-GF-BMM-JTJ** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **DEFENDANT BNSF'S BRIEF IN** |
| | ) | **OPPOSITION TO PLAINTIFF'S** |
| | ) | **MOTION FOR ORDER TO** |
| **BNSF RAILWAY COMPANY, a** | ) | **COMPEL** |
| **Delaware corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# Contents

I.    INTRODUCTION AND REQUESTED RELIEF ............................................. 1

II.   FACTUAL BACKGROUND ............................................................. 2

III.  ARGUMENT ................................................................................. 4

   A.    Interrogatory No. 1 and Request for Production No. 4 ................................ 4

     1.   These Discovery Requests are Irrelevant, Overbroad and Burdensome ...... 5

     2.   These Discovery Requests Seek Private Information of Third Parties ......... 8

     3.   These Discovery Requests Seek Irrelevant Personal Injury Information ..... 8

   B.    Interrogatory No. 2 ........................................................................ 9

   C.    Request for Production No. 1 ........................................................... 9

   D.    Request for Production No. 5 ......................................................... 10

   E.    Request for Production No. 8 ......................................................... 12

   F.    Request for Production No. 9 ......................................................... 14

   G.    Request for Production No. 10 ....................................................... 15

   H.    Request for Production No. 11 ....................................................... 16

   I.    Interrogatory No. 3 ...................................................................... 18

   J.    Interrogatory No. 5 ...................................................................... 19

   K.    Request for Production No. 14 ....................................................... 20

   L.    Request for Production No. 15 ....................................................... 21

   M.    Interrogatory No. 6 and Request for Production No. 17 .......................... 22

   N.    Interrogatory Nos. 7, 8, and 10 ...................................................... 25

   O.    Request for Production No. 18 ....................................................... 26

   P.    Requests for Production Nos. 19 and 20 ........................................... 27

IV.   CONCLUSION ............................................................................ 28

# Table of Authorities
## Cases

*Araujo v. New Jersey Transit*,
  708 F.3d 152 (3rd Cir. 2013) ..................................................................6

*Clark v. Runyon,*
  218 F.3d 915 (8th Cir. 2000) ..................................................................6

*Discover Financial v. Visa*,
  2006 WL 3230157 (S.D.N.Y. 2006) ......................................................17

*Fields v. Shelter Mut. Ins. Co.,*
  520 F.3d 859 (8th Cir. 2008) ..................................................................5

*Gavenda v. Orleans County*,
  182 F.R.D. 17 (W.D. N.Y. 1997) .............................................................6

*Gibson v. Ford Motor Co.*,
  510 F. Supp. 2d 1116 (N.D. Ga. 2007) .................................................24

*Hardrick v. Legal Services Corp.,*
  96 F.R.D. 618 (D. D.C. 1983) .................................................................6

*Harvey v. Anheuser-Busch, Inc.,*
  38 F.3d 968 (8th Cir. 1994) ....................................................................6

*Hawaiian Airlines v. Norris*,
  512 U.S. 246 (1994) ..............................................................................13

*Heim v. BNSF*,
  2014 U.S. Dist. LEXIS 171009 (D. Neb. 2014) .......................... 5, 6, 7

*Herbert v. Lando*,
  441 U.S. 153, 99 S. Ct. 1635 (1979) .....................................................17

*In re Grand Jury Proceedings*,
  162 F.3d 554 (9th Cir. 1998) ................................................................23

*Johnson v. Bunny Bread, Co.,*
  646 F.2d 1250 (8th Cir. 1981) ................................................................5

*Jones v. Union Pac. R.R. Co.*,
  2015 U.S. Dist. LEXIS 97327 (N.D. Ill. 2015) ......................................7

*Kuduk v. BNSF*,
  768 F.3d 786 (8th Cir. 2014) ....................................................... passim

*Lanear v. Safeway Grocery,*
  843 F.2d 298 (8th Cir. 1988) ..................................................................5

*Lynn v. Deaconness Med. Ctr.-W. Campus,*
  160 F.3d 484 (8th Cir. 1998) ..................................................................6

*Magnetar Techs. Corp. v. Six Flags*,
  886 F. Supp. 2d 466 (D. Del. 2012) ....................................................23

*Magnuson v. Burlington Northern*,
  576 F.2d 1367 (9th Cir. 1978) .............................................................13

*Major Tours, Inc. v. Colorel*,
  2009 U.S. Dist. LEXIS 68128 (D. N.J. 2009) .....................................24

*Monohon v. BNSF*,
  4:14-cv-003050JAJ-SBJ (S.D. Iowa Oct. 9, 2015) ..........................7, 8

*Mont. Human Rights Div. v. City of Billings*,
  199 Mont. 434, 649 P.2d 1283 (1982) ...................................................8

*Philip v. Ford Motor Co.*,
  413 F.3d 766 (8th Cir. 2005) ..................................................................5

*Regan-Touhy v. Walgreen Co.*,
  526 F.3d 641 (10th Cir. 2008) ..............................................................17

*Riser v. Target Corp.*,
  458 F.3d 817 (8th Cir. 2006) ..................................................................5

*Rivera v. NIBCO, Inc.*,
  364 F.3d 1057 (9th Cir. 2004) ..............................................................18

*Sallis v. University of Minn.*,
  408, F.3d 470 (8th Cir. 2005) .................................................................7

*Semple v. Federal Exp. Corp.*,

  566 F.3d 788 (8th Cir. 2009) ..............................................................6, 7

*State v. Burns*,
  253 Mont. 37, 830 P.2d 1318 (1992) .....................................................8

*Texas Dept. of Community Affairs v. Burdine*,
  450 U.S. 248 (1981) ................................................................................5

*Wells v. Xpedx*,
  2007 WL 1200955 (M.D. Fla. 2007) ...................................................17

## Statutes

45 U.S.C. § 151 .........................................................................................13

45 U.S.C. § 153 .........................................................................................13

49 U.S.C. § 20109 ..................................................................................1, 12

## Rules

Rule 26(b)(3)(A) & (B), F.R.Civ.P. ...........................................................23

Rule 30(b)(6) ...............................................................................................7

## I. INTRODUCTION AND REQUESTED RELIEF

Defendant BNSF Railway Company ("BNSF") opposes Plaintiff's Motion for Order to Compel ("Plaintiff's Motion," Dkt. 51). This case arises under the "whistleblower" provisions of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109 *et seq.* What is relevant in this case is whether the two employment decisions related to Plaintiff – receiving two serious "Level S" rule violations for failing to follow instructions within a 12-month period and being terminated as a result – were intentionally made to retaliate against him for engaging in a protected activity. To that end, any relevant or discoverable information rests only with ascertaining what the decision makers knew and the reasons for their decisions.

Instead, Plaintiff seeks to engage in discovery designed to harass BNSF, asking for documents and information having absolutely nothing to do with this case nor likely to lead to the discovery of admissible evidence. The discovery requested by Plaintiff is not proportional to the needs of this single-plaintiff retaliation case. BNSF operates in 28 states and has over 45,000 employees. Plaintiff worked at Havre, Montana, when BNSF issued the discipline at issue in this case. Yet, somehow, Plaintiff believes discovery from each remote location is appropriate. But, this burdensome discovery would cause an undue burden on BNSF, and is irrelevant and not reasonably likely to lead to the discovery of admissible evidence. BNSF respectfully requests that Plaintiff's motion be denied in its entirety.

## II.	FACTUAL BACKGROUND

This discovery is not the Plaintiff's first bite at the apple.  Plaintiff conducted extensive written discovery at the administrative level resulting in the production of over 700 pages of information.  Dec. Rechtfertig ¶3 (Oct. 16, 2015) (Ex. "A").  Not only that, but he deposed five BNSF officials, including the two "decision makers" pertinent to this case.  Dec. Rechtfertig ¶3 (Aug. 11, 2015) (Ex. "B").  So intent is Plaintiff on wasting scarce judicial resources that he then filed a *de novo* proceeding in this Court – albeit allowed by statute.

Since this case arises under the "whistleblower" provisions of the FRSA, the focus is Plaintiff's ability to establish a prima facie case that requires, *inter alia*, that the circumstances of his termination raise an inference that "protected activity" on the part of Plaintiff was a "contributing factor" (*i.e.*, intentional retaliation) in the termination decision.  *Kuduk v. BNSF*, 768 F.3d 786, 789 (8th Cir. 2014).  "[T]he contributing factor that the employee must prove is intentional retaliation prompted by the employee engaging in protected activity."  *Kuduk*, 768 F.3d at 791 (emphasis added).  It is then BNSF's burden to show by clear and convincing evidence that it would have made the same termination decision in the absence of the alleged protected activity.  *Id*.  Thus, the scope of discovery in this case should be influenced by the fact that the focus is on whether BNSF intentionally retaliated against Plaintiff for engaging in a purported protected activity, not on whether Plaintiff received administrative or contractual due process.

Plaintiff was disciplined for violating GCOR 1.13 on two separate occasions in 2012 leading to his termination from BNSF in December 2012. Discipline Ltrs. (Ex. "C"). The disciplinary process for each of the violations was conducted pursuant to a collectively-bargained result of long-term and intense negotiations between BNSF and Plaintiff's union. BNSF Trainmaster Connan Moler was the conducting officer for the first rule violation. Invest. Wrksht. (Ex. "D"). BNSF Trainmaster Jason Maser was the conducting officer for the second rule violation that led to Plaintiff's dismissal. Invest. Wrksht. (Ex. "E"). Then-Labor Relations Director of Employee Performance Joe Heenan recommended dismissal. Depo. Heenan 13:20-25 (Ex. "F"). Former Terminal Manager Ross Molyneaux agreed with Mr. Heenan's recommendation. Depo. Molyneaux 38:23 – 39:3 (Ex. "G"). Plaintiff has deposed each of these officials. Dec. Rechtfertig ¶¶3,4 (Aug. 11, 2015). He has additionally deposed three other management officials. *Id.*, ¶3; Depo. Williams 4:8-20 (Ex. "H").

BNSF has expended a great deal of time and resources in order to provide good faith responses to Plaintiff's discovery requests over the past two years this case has been at both the administrative and Federal District Court levels. In fact, it has produced approximately 800 pages of additional information since this case was at the administrative level. Dec. Rechtfertig ¶4 (Oct. 16, 2015). It appears that Plaintiff is not satisfied with the extensive discovery already conducted by him

and produced by BNSF, and instead wants to leverage wholly irrelevant, harassing, and overbroad information that has nothing to do with his claims.

## III.  ARGUMENT

The subject discovery requests and responses are attached as Exhibit "A" to Plaintiff's Motion.

### A.  Interrogatory No. 1 and Request for Production No. 4

Plaintiff's Interrogatory No. 1 seeks irrelevant employee discipline information from BNSF's Employee Performance Tracking System ("EPTS"), without geographic, craft, or decision maker limitation, from 2011 to the present, regarding individuals "charge[d] with the same type of rule violation," along with: names; where the individual was charged; why they were charged; the date of discipline; the identity of the charging officer; the type of discipline administered; whether an investigation was held; and whether the person charged had previously filed a personal injury complaint.  Request for Production No. 4 seeks the documentary evidenced generated as a result of the search.  Why is any of this information even relevant to this single-plaintiff FRSA retaliation case?  Plaintiff has so far failed to answer this question.

BNSF objected to the requests for a variety of reasons, described below. Nevertheless, despite its objections, BNSF still produced the results of a search for employees charged and disciplined for the same rule violation following investigations held by Moler and Maser.

### 1. These Discovery Requests are Irrelevant, Overbroad and Burdensome

As an initial matter, EPTS was implemented in mid-2011. *See* Depo. James Hurlburt 162:4-9 (Ex. "I"). As such, BNSF cannot produce information from EPTS for dates prior to mid-2011.

Plaintiff asks for the production of irrelevant system-wide information and makes no attempt to limit the request to any particular division, terminal location, or decision maker. It also is not limited to BNSF craft or the applicable time period pertinent to this case. Plaintiffs are only entitled to information for employees who are <u>similarly situated</u> to them because they cannot argue general disparate treatment with evidence of the treatment of other employees without providing evidence of substantial similarity in all relevant respects to his circumstances. *Lanear v. Safeway Grocery,* 843 F.2d 298, 300-301 (8th Cir. 1988); *Riser v. Target Corp.,* 458 F.3d 817, 821-822 (8th Cir. 2006); *Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir. 2005); *Fields v. Shelter Mut. Ins. Co.,* 520 F.3d 859 (8th Cir. 2008). It is not BNSF's burden of proof to show dissimilarity *Heim v. BNSF*, 2014 U.S. Dist. LEXIS 171009 (D. Neb. 2014); *Lanear,* 843 F.2d at 301 citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Johnson v. Bunny Bread, Co.,* 646 F.2d 1250, 1254 (8th Cir. 1981). Employees are similarly situated when involved in the same misconduct or misconduct that is of "comparable seriousness." *Harvey v. Anheuser-Busch, Inc.,*

38 F.3d 968, 972-73 (8th Cir. 1994). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon,* 218 F.3d 915 (8th Cir. 2000)(emphasis added) citing *Lynn v. Deaconness Med. Ctr.-W. Campus,* 160 F.3d 484, 487-88 (8th Cir. 1998).

In an alleged retaliation or discrimination claim, discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving an alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." *Hardrick v. Legal Services Corp.,* 96 F.R.D. 618-619 (D. D.C. 1983). Plaintiff must demonstrate the need for the information sought from BNSF. *Gavenda v. Orleans County*, 182, F.R.D. 17 (W.D. N.Y. 1997); s*ee also Semple v. Federal Exp. Corp.,* 566 F.3d 788, 794 (8th Cir. 2009).

Plaintiff argues that BNSF's reliance on non-FRSA decisions is misplaced, because FRSA claims "use a different analytical framework." Pl.'s Mot. 8. In support of this notion he cites generally to *Araujo v. New Jersey Transit*, 708 F.3d 152 (3rd Cir. 2013). *Id*. However, *Araujo* does not stand for the notion that defendants in FRSA claims must provide system-wide discovery. Instead, case law establishes otherwise. For example, in *Heim* (Ex. "J"), the federal district court properly limited discovery of prior discipline concerning the same alleged

protected activity to the local level. The court held that "company-wide" statistics are usually not helpful in employment cases because those who make employment decisions vary across divisions. *18. "Courts therefore limit the discovery of company records 'to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery.'" *Id*. (quoting *Sallis v. University of Minn.*, 408, F.3d 470, 478 (8th Cir. 2005)). "This showing of need is not met by merely claiming an adverse employment action arose from a company's nationwide policy or its interpretation." *Id*. (citing *Semple*, *supra*). The court agreed with BNSF that its production of location-specific discovery for a single year was sufficient. *Id*. at 20,24. *See also Jones v. Union Pac. R.R. Co.*, 2015 U.S. Dist. LEXIS 97327, *31-32 (N.D. Ill. 2015)(Ex. "K").

Just days ago another federal court limited Rule 30(b)(6) discovery in an FRSA "whistleblower" case to the division and craft in which the plaintiff worked, for a period of two years. In *Monohon v. BNSF*, BNSF argued that the relevant geographic area for the Rule 30(b)(6) depositions was the Nebraska Division in which the plaintiff worked and was investigated, and further argued that the discovery should be limited to the plaintiff's craft for the time period of his discipline. Order, 12-13, *Monohon v. BNSF*, 4:14-cv-003050JAJ-SBJ (S.D. Iowa Oct. 9, 2015)(Ex. "L"). The Court concluded that there was no showing of "a sufficient need for unfettered, company-wide discovery during the Rule 30(b)(6) deposition." *Id*., 15; citing *Semple*, 566 F.3d at 794. BNSF further provided

sufficient good cause to limit the 30(b)(6) depositions to the plaintiff's craft.  *Id.*

Finally, the *Monohon* Court determined that a two-year timeframe (one year pre-

and one year post-discipline) was appropriate.  *Monohon* Order, 15-16.  The same

rationale applies here.

### 2. These Discovery Requests Seek Private Information of Third Parties

These requests explicitly seek the identities of employees not a party to this

lawsuit, along with their corresponding discipline and personal injury information.

Requiring BNSF to provide this information would violate the privacy rights of

BNSF's employees who are not a party to this lawsuit according to Montana's

explicit right of privacy, Article II, Section 10 of the Montana Constitution.  *See*

*Mont. Human Rights Div. v. City of Billings*, 199 Mont. 434, 649 P.2d 1283

(1982); *State v. Burns*, 253 Mont. 37, 40, 830 P.2d 1318, 1320 (1992).

### 3. These Discovery Requests Seek Irrelevant Personal Injury Information

The inquiry into whether employees submitted personal injury reports is

irrelevant and not likely to lead to the discovery of admissible evidence in this case

where Plaintiff is not claiming retaliation for submitting a personal injury report.

He claims that the reason for the request is "to demonstrate how the railroad

applies its discipline system."  Pl.'s Mot. at 7.  It is hard to make sense of this

argument, especially since what Plaintiff needs to establish is "intentional

retaliation prompted by [him] engaging in protected activity."  *Kuduk*, *supra*.

Plaintiff does not allege reporting an injury as one of his "protected activities," and the topic has nothing to do with this case.

### B.     Interrogatory No. 2

This interrogatory is similar to Plaintiff's Interrogatory No. 1, but seeks information regarding employees who were disciplined or provided alternative handling "for failing to perform an air brake test and/or who performed an improper air brake test."    BNSF repeats its objections set forth regarding Interrogatory No. 1, above.   The request is overbroad, not limited to geographic area or craft, and covers far more time that would arguably be necessary.   It further impermissibly seeks the identities of third parties.

Beyond those objections, Plaintiff was not investigated or disciplined for "failing to perform an air brake test" or "performing an improper air brake test." He was investigated and disciplined for violating GCOR 1.13 (failing to follow instructions).   Any information sought as a result of the requested search would therefore be irrelevant to Plaintiff's claims in this case and not reasonably calculated to lead to the discovery of admissible evidence.

### C.     Request for Production No. 1

Plaintiff does not actually point to any alleged deficiencies with regard to BNSF's response to this Request.   Pl.'s Mot. at 9.   Accordingly, BNSF cannot provide a response.   Should Plaintiff for the first time in his reply brief point to

specific examples of alleged deficiencies in response to this Request, BNSF reserves the right to provide supplemental briefing.

### D.    Request for Production No. 5

This Request seeks information regarding BNSF's "velocity initiative" as well as "any instructions or initiatives that were particular to Mr. Brewer's crew, terminal, and/or region" on the day of Shelby incident.  BNSF objected that this Request was hopelessly over broad and unduly burdensome because there were hundreds of "instructions" "particular to Mr. Brewer's crew, terminal, and/or region" on the date of the incident.  Plaintiff's Request provides no limit to the instructions sought.

BNSF additionally objected to the "velocity initiative" and more general "initiatives" queries because they are vague and ambiguous.  BNSF does not have some specific "velocity initiative," and it is unclear what other alleged "initiatives" Plaintiff is referring to with regard to his "crew, terminal, and/or region."  With respect to "velocity," that is nothing more than a term that is used to describe the fact that BNSF, as a company in the business of delivering goods, is constantly examining its processes to ensure timely delivery of goods.

Plaintiff attaches an article published by "Progressive Railroading" in support of his Request.  Importantly, this is not a BNSF publication.  Further, even according to this document, "[velocity] isn't one big idea, it's a bunch of little

ideas." Pl.'s Mot., Ex. C. The request for documents regarding a centralized "velocity initiative" are misplaced.

Further, the idea of velocity is irrelevant and not reasonably calculated to lead to the discovery of admissible information. According to Plaintiff, the question to be determined with regard to the Shelby Yard is if Plaintiff was retaliated against for "checking to make sure that handbrakes were not applied on cars that were about to be moved[.]" Pl.'s Compl. ¶20(c) (Dkt. 1). As such, the pertinent question is whether the decision makers "intentionally retaliated" against Plaintiff for allegedly "checking to make sure that handbrakes were not applied." *Kuduk*, 768 F.3d at 791. The question is not whether BNSF considered "velocity" or any other alleged initiative at the time of his termination.

Finally, according to Plaintiff, his Request is appropriate because it "may have incentivized [] officials to place speed ahead of safety and rules compliance." Pl.'s Mot. at 10 (emphasis added). Even if such an argument was relevant, which it is not, it is clear that Plaintiff's counsel is conducting this discovery based on a "hunch." As the Court explained at the October 6, 2015, oral argument, Plaintiff should not be allowed to conduct discovery based on hunches or "hypotheticals." Hearing Trans. 62:2-3 (Dkt. 58). Plaintiff has pointed to no evidence to suggest that speed had anything to do with him being disciplined for failing to follow instructions. This purely speculative discovery should not be allowed.

## E.    Request for Production No. 8

Plaintiff has requested "any and all documents regarding the BNSF investigations conducting officer training program and/or the Instructor Guide given as a part of this training or in connection with this training." BNSF's primary objection to this Request is that the training obtained by conducting officers is irrelevant to the question of whether BNSF dismissed Plaintiff as a result of retaliation, and is not reasonably calculated to lead to the discovery of admissible information.

The scope of discovery in this case is influenced by the fact that the focus is on BNSF's motivation for terminating Plaintiff, not on whether Plaintiff received administrative or contractual due process. *See Kuduk*, 768 F.3d at 789. For that reason, whether or not the management officials who investigated Plaintiff (but did not make the decision to terminate him) were properly trained in conducting an investigation.

Also, the FRSA provides a cause of action for individuals who believe they received an adverse employment action in retaliation for some protected activity. 49 U.S.C. § 20109(a). Plaintiff does not allege that improper training of investigating officers constitutes an "adverse employment action," nor does he point to any case law suggesting that it could. Assuming, *arguendo*, that the officers were inadequately trained, they would not have been inadequately trained <u>as retaliation</u> against Plaintiff for his claimed protected activities. It is nonsensical

to argue that BNSF somehow purposefully inadequately trained these officers to retaliate against Plaintiff. Improper training of investigating officers simply does not fit in the framework of an FRSA claim.

Instead, it seems Plaintiff simply wants to challenge the sufficiency of the investigations. But, the investigation process is governed by the applicable bargained-for Collective Bargaining Agreement ("CBA") and preempted/precluded by the Railway Labor Act ("RLA"). *See* 45 U.S.C. § 151 *et seq*; *see also Hawaiian Airlines v. Norris*, 512 U.S. 246 (1994)(RLA "sets up a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.")(citing 45 U.S.C. § 153); *Magnuson v. Burlington Northern,* 576 F.2d 1367 (9th Cir. 1978). If Plaintiff believes that he was not afforded appropriate due process as part of his investigations, his remedy is to file a claim under the RLA (which he has done), not the FRSA.

Finally, there is no question that the training information is proprietary information. It is provided for management employees in an effort to prepare them to act as investigating officers. It is specific to BNSF and the needs of the given CBA. Absent some specific need, there is no basis to expose BNSF's training of its management to act as investigating officers. Plaintiff's counsel represents unions, the very unions engaged in the types of investigations for which the requested documents are sought. There are no assurances Plaintiff's counsel

would even keep the requested materials private and not disclose them either to the unions or to other attorneys. Plaintiff offers no showing of need for the requested information, and his request should be denied.

### F.    Request for Production No. 9

This Request seeks "an index of the items that exist on the secure and/or shared drive of the director and/or manager of rules department, if any." But, there is no evidence that anyone contacted the director or manager of rules department about the interpretation of any rule that was violated by Plaintiff. As such, the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Perhaps most importantly, this is yet another attempt by Plaintiff to obtain a picture of BNSF's IT Infrastructure that was soundly rejected by the Court in relation to Plaintiff's Rule 30(b)(6) requests.

It also cannot be stressed enough that Plaintiff's alleged "protected activity" for which he claims he was retaliated at the Shelby Yard was "checking to make sure that handbrakes were not applied on cars that were about to be moved." Pl.'s Compl. ¶20(c). Plaintiff must demonstrate that BNSF "intentionally retaliated" against him for this alleged "protected activity" when he was terminated months later. *Kuduk*, 768 F.3d at 791. The question is not whether BNSF "got it right" when it disciplined Plaintiff for his actions in Shelby on July 6, 2012.

The request is also overly broad and unduly burdensome because it seeks information not limited to time period, rules applicable to Plaintiff's job as a conductor, and rules for which Plaintiff was not disciplined. Finally, any "index" now in existence would not be the same "index" in existence in 2012 when the alleged retaliation occurred and would be further irrelevant to Plaintiff's claims.

### G.     Request for Production No. 10

Plaintiff seeks BNSF management bonus information, including the actual bonuses received by all managers throughout BNSF's system. BNSF objects for a number of reasons. First, it is wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. And, it is difficult, if not impossible, to follow Plaintiff's claimed rationale for the information. According to Plaintiff's misdirected theory, and without any supporting evidence, Plaintiff was disciplined for his activities on July 6, 2012, because "safety" is a factor in the bonus calculation creating "an incentive for [company officials] to pressure employees into not reporting safety rule violations or injuries in order to boost their own pay." Pl.'s Mot. at 13. It must be pointed out that Plaintiff is not claiming that a safety rule violation or injury was not reported by BNSF. *See generally* Pl.'s Compl. So, even if it could somehow be tied to management bonuses, it is not relevant in this case.

Further, there is <u>no evidence to support</u> any allegation that decisions were made with regard to Plaintiff because of management bonuses. This is despite the

fact that Plaintiff has deposed six separate management personnel. Once again, this is Plaintiff's counsel impermissibly operating on a "hunch."

The Request is further improper because it seeks the personal and private earnings information for <u>all</u> BNSF managers and supervisors from 2011 to present. While the production of <u>any</u> of this bonus material should not be allowed in this case, it boggles the mind to think that there would be any imaginable rationale for Plaintiff to discover the bonuses for all managers throughout the system from 2011 on.

### H.      Request for Production No. 11

Plaintiff requests BNSF to produce all documents contained in various folders that he believes exist on the "Montana Division Secure Drive." This is another "blind" request by Plaintiff for all information saved in various drives and folders, so he can root through the information and see if there is anything he finds of interest. The Court has already denied Plaintiff's attempts to do this in the Rule 30(b)(6) context, and this similar request should be denied outright.

BNSF objected to the Request on the grounds that it calls for "confidential and proprietary information," and that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. It is further not proportional to the needs of the case. The types of folders listed, if the equivalents even exist in a "Montana Division Secure Drive," would contain information wholly irrelevant to this case. "[T]he requirement of Rule 26(b)(1)

that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .' With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649 (1979); *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008).

There is no ground for BNSF to have to open up its files for Plaintiff to sift through BNSF folders. Plaintiff can point to no information that he believes exists is in the requested folders that is discoverable and has not been produced. Plaintiff points to *Discover Financial v. Visa*, 2006 WL 3230157 (S.D.N.Y. 2006) in support of his claim that he should be able to "understand IT systems and document retention." Pl.'s Mot. at 14. But, unlike in *Discover*, Plaintiff can point to no reason to believe that all responsive information has not been produced. *Discover* is not on point.

Plaintiff also relies on *Wells v. Xpedx*, 2007 WL 1200955 (M.D. Fla. 2007), only stating that "the court zeroed in on the fact that the defendant had not provided enough information regarding their document retention practices." Pl.'s Mot. at 14. The document retention issue has already been decided by the Court. Hearing Trans. 58:5-10 (Dkt. 58)(Granting BNSF's motion for protective Order

regarding Plaintiff's 30(b)(6) topics 5 and 6). Beyond that, this Request does not even seek document retention documents.

## I.    Interrogatory No. 3

This Interrogatory seeks the identity and description of the "program/database" from which Plaintiff's training history was pulled, "including but not limited to the categories of information, types of tests and/or training available, and/or how the items are populated and/or compiled." Once again, we are posed with an irrelevant, overbroad, and non-proportional request for information about the structure of a BNSF database. As the Court has already done in the 30(b)(6) context, the Court should similarly find that this information is not discoverable in this matter. Hearing Trans. 64:7-8 (Dkt. 58)(granting BNSF's motion for protective order regarding Plaintiff's Rule 30(b)(6) topic 7 seeking vast database information).

BNSF has produced Plaintiff's training history. Plaintiff, who took part in the training, points to no deficiencies in the training information. Pl.'s Mot. at 15. Instead, he wants to learn the detailed aspects of BNSF's database so he "will not have to rely on the railroad's assurances that all such information has already been produced." *Id*. "District courts need not condone the use of discovery to engage in 'fishing expedition[s]'" such as this. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).

**J.      Interrogatory No. 5**

Plaintiff seeks BNSF to identify and describe its "policies regarding coaching and counseling." This discovery request is overly broad and not limited in time or scope. That said, and without waiving this objection, BNSF answered by stating that it has no coaching and counseling policy. It seems that Plaintiff simply dislikes BNSF's answer.

While BNSF does use the term "coaching and counseling" to describe interactions between managers and employees discussing any number of things, there is no "policy" on the issue. It must also be noted that Plaintiff is incorrect when he says that he "was not offered a 'coach and counsel.'" Pl.'s Mot. at 16. He cites to page 62 of the deposition of BNSF Director Labor Relations Joe Heenan in support of his claim that no coaching and counseling took place. *Id*. However, when one looks to page 62 of Mr. Heenan's deposition, which is attached as Exhibit "E" to Plaintiff's Motion, Mr. Heenan actually said just the opposite, noting that Plaintiff had "been coached and counseled twice." Depo. Heenan 62:4-13 (attached as Ex. "E" to Pl.'s Mot.)(emphasis added).

Not only that, but there is documentary evidence that Plaintiff was coached and counseled on re-testing pre-tested cuts of cars and properly reporting his hours of service. One of Plaintiff's supervisors, Roger Galland, made a note of a meeting with Plaintiff on April 2, 2012, in which he discussed retesting pre-tested rail cars as well as properly "tying up" when he is above hours of service – two issues at the

heart of Plaintiff's current claim. (Ex. "M"). Additionally, Plaintiff himself memorialized that same meeting in a train activity report from the same day. (Ex. "N")("Called into conference with R. Galland J. Mills to discuss P/U in Shelby, also discussed tie up protocal.").

## K.    Request for Production No. 14

This Request seeks "Terminal Scorecard Station Summary" information for the entire Montana Division, "including but not limited to the Best Way Terminal Performance Summary, the High Level Metrics Maintenance Improvement for Montana Division Terminals, as well as the Montana Division Metrics Summary as a whole and the Control Charts for the Montana Division terminals for 2011-2013." Once again, Plaintiff seeks volumes of entirely irrelevant and non-proportional electronic data based on a "hunch" that perhaps his managers were somehow "pressured," causing them to treat him differently. This argument is unavailing and should be denied. Hearing Trans. 62:1-2 (Dkt. 58).

BNSF objected on the basis that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence given the issues and needs of this case. Not only is the information sought completely irrelevant to this case, but it is not limited to the areas Plaintiff worked, Plaintiff's craft, or the time of his discipline. Further, as BNSF explained above, the question for the fact finder in this case is not whether BNSF managers had concerns that would have arguably applied to all employees, the sole question

is whether they retaliated against Plaintiff – and only Plaintiff – for taking part in alleged "protected activities."

Plaintiff points to the deposition of former Trainmaster Moler in support of his argument. Pl.'s Mot. at 17. It must be noted that Moler was not one of Plaintiff's supervisors. Beyond that, Moler never testified that any of the metrics requested by Plaintiff caused him to treat individual employees in a different manner. Instead, he explained that the metrics "were not about trains moving faster, it was about serving customers because that's what [his] main mode was." Depo. Moler 130:3-13 (Ex. "O").

## L.     Request for Production No. 15

Plaintiff has requested, without time or geographic limitation, "all manuals, documents, training tools utilized during training and/or requalification training classes for conductors by Training/Technical Support." In response, BNSF objected that the Request is overly broad and unduly burdensome because it is not limited in time or scope. On its face, the Request seeks all training information for all conductors throughout the railroad for all time.

But, beyond objecting, BNSF produced hundreds of pages of training materials. It provided various safety manuals applicable to Plaintiff's job duties, as well as the training received by Plaintiff with regard to hours of service requirements. These documents were produced in addition to Plaintiff's actual training history. Moreover, Plaintiff has deposed BNSF Manager of Technical

Training and Support. Depo. Williams 4:14-18 (Ex. "H"). BNSF has more than provided a good faith response to Plaintiff's request. Plaintiff is not entitled to all training materials for all conductors for all time, and can point to nothing that might be relevant that was not produced.

### M. Interrogatory No. 6 and Request for Production No. 17

These discovery requests seek a description of the information contained within BNSF's internal litigation hold issued by its Law Department in this case, as well as a copy of the litigation hold itself. Not only that, but the Interrogatory further seeks the name and location of the electronic storage systems or media that host, contain, or store the documents subject to the litigation hold. *Id*. It further seeks the persons who received the hold, those who issued it, and the time period it covered. *Id*.

BNSF objected on the grounds that the hold is wholly irrelevant to Plaintiff's claims and not reasonably calculated to lead to the discovery of admissible evidence. Much like the records retention policy, which has already been deemed undiscoverable by this Court (Hearing Trans. 58:5-10 (Dkt. 58)), Plaintiff seeks the litigation hold information not because he believes some specific document is missing, but simply because he believes something may not have been kept by BNSF that should have. It is, once again, the purest form of fishing expedition.

BNSF also objected because the information contained within the litigation hold is protected from disclosure by the attorney-client privilege, as the hold was created by and provided to individual recipients by BNSF counsel. The attorney-client privilege is "not only the oldest privilege known to the common law, but the attorney-client privilege is also, 'perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.'" *In re Grand Jury Proceedings*, 162 F.3d 554, 556 (9th Cir. 1998). "Courts understandably do not easily create new exceptions to this traditional privilege." *Id.*

As BNSF stated in its objection, the litigation hold issued in this case was created by and provided to the recipients by BNSF counsel. Not only the document itself but also the information contained within it is communication from attorney to client. Moreover, BNSF's litigation hold was prepared by BNSF's counsel in anticipation of litigation and the information contained within it is protected from production by the work-product doctrine. Rule 26(b)(3)(A) & (B), F.R.Civ.P. Simply the knowledge of what was included within the hold is a window into BNSF counsel's analysis of Plaintiff's claims and what may be relevant to those claims or BNSF's defenses. Indeed, absent a showing of spoliation, which there has been none, litigation hold documents are clearly privileged. *See e.g. Magnetar Techs. Corp. v. Six Flags*, 886 F. Supp. 2d 466, 482 (D. Del. 2012); *Major Tours, Inc. v. Colorel*, 2009 U.S. Dist. LEXIS 68128, *6-7

(D. N.J. 2009).  Plaintiff agrees, and fails to point to any evidence of spoliation on the part of BNSF.  Pl.'s Mot. at 18, 22.

Courts have also found that a list of material required to be maintained pursuant to a litigation hold is undiscoverable.  For example, in *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007), the Court denied both the production of the litigation hold itself, as well as a description of the information contained within the document.  The Court concluded that the information was "not reasonably calculated to lead to the discovery of admissible evidence" and that that it involved attorney work product.  *Id*.  Further, the Court determined that the litigation hold material did not "necessarily bear a reasonable relationship to the issues in litigation."  *Id*.  Finally, the Court concluded that its production could dissuade other entities from issuing similar litigation hold documents when "parties should be encouraged, not discouraged, to issue such directives."  *Id*.

While some courts have ordered the production of the types of information included within the hold and who received the hold, there is no grounds to pierce the attorney client privilege and work product doctrine in this case.  Plaintiff can point to no evidence that BNSF has failed to preserve <u>any</u> information.  As this Court has pointed out, Plaintiff can point to no evidence that a letter or email from person "A" to person "B" has been deleted or not produced.  Hearing Trans. 54:1-3 (Dkt. 58).  Plaintiff points to no reason that the litigation hold information will lead to the discovery of admissible evidence other than to say that it "may show that

some information was destroyed." Pl.'s Mot. at 18. Just as other courts have under different circumstances ordered production of document retention information, but this Court has ruled against it, this Court should also rule against production of the types of information contained within the hold document as being privileged and protected by the work product doctrine.[1]

## N. Interrogatory Nos. 7, 8, and 10

At the October 6, 2015, oral argument, the Court ruled that Plaintiff could not discover BNSF's "IT roadmap" because there was no evidence to suggest that the information would lead to the discovery of admissible evidence in this case where there is no evidence of missing documents or other information. Hearing Trans. 64:7-8 (Dkt. 58)(granting BNSF's motion for protective order regarding Plaintiff's Rule 30(b)(6) topic 7 seeking vast database information). Interrogatory Nos. 7 and 8 are nothing more than Plaintiff's attempt to rummage through BNSF's internal data network and should not be allowed. Interrogatory No. 10 pertains to BNSF's policy for managing electronic devices taken out of service or reprovisioned. Again, the Court has already ruled that this information is not discoverable, and should do so once again here. Hearing Trans. 72:9-16 (Dkt. 58).

Each of these requests is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. They further

---

[1] BNSF will, should the Court deem necessary, produce the pertinent litigation hold documents for the Court's review *in camera*.

seek confidential and proprietary database and retention information of BNSF. Plaintiff's argument that he should be able to sift through BNSF's databases and electronic devices just in case it might spur some additional discovery is without merit and boils down to another of his fishing expeditions. Plaintiff's motion to compel regarding these interrogatories should be denied, as his similar Rule 30(b)(6) requests were denied.

## O.    Request for Production No. 18

This is yet another attempt by Plaintiff to obtain BNSF's records retention policy. The Court ruled in BNSF's favor on this issue in the 30(b)(6) realm, and there is no reason to do otherwise here. Hearing Trans. 58:5-10 (Dkt. 58). Plaintiff can point to no evidence to support an argument that BNSF has not properly retained information. Instead, he cryptically argues that the records retention policy "will put a final grid on the roadmap created by other discovery requests." Pl.'s Mot. at 23. Putting a "final grid in [a] roadmap," whatever that might mean, is far beyond any reasonable scope of discovery and should not be permitted.

It is important to note that while BNSF did object that the records retention policy for all records, system-wide, for all years from 2012 to the present was overly broad, sought discover or proprietary information, and sought information regarding documents in no way relevant to this case, BNSF did ask that Plaintiff identify the specific categories of documents for which this information was

sought.  If he did so, BNSF agreed to provide the applicable retention schedule.

Plaintiff has yet to attempt to engage BNSF in its offer.

## P.    Requests for Production Nos. 19 and 20

These requests seek for production and examination by an expert witness

electronic devices as well as information recovered from electronic devices.  BNSF

objected that the information sought was not reasonably calculated to lead to the

discovery of admissible information, and was overly broad and unduly

burdensome.  BNSF further objected that a request for forensic examination is not

contemplated in the course of normal discovery absent a showing of specific need

and good cause.  Further, the devices contemplated in the requests would contain

personal, private, and confidential information of third-parties as well as attorney-

client privileged and work product doctrine protected material.

The parties cannot simply inspect the electronic media of another party

absent a demonstration of "specific need and good cause."  Order (Dkt. 32) at 3.

Plaintiff has not even attempted to meet this weighty burden.  As the Court did

with the similar Rule 30(b)(6) notices, BNSF should not be compelled to produce

the requested electronic devices and electronic information for no reason other than

Plaintiff's counsel thinks it may be interesting.  Just as Plaintiff's counsel would

not have the right to root through BNSF's hard files if the information sought was

in paper, he also does not have the right to root through BNSF's electronic files.

The Sedona Principles: Best Practices, Recommendations & Principles for

Addressing Electronic Document Production, Second Edition, Cmt. 6.b.,

Ilustration I ("The concept of relevance is no broader or narrower in the electronic

context than in the paper context.")

## IV.   CONCLUSION

For the foregoing reasons, BNSF respectfully requests that Plaintiff's

Motion to Compel be denied.

DATED this 16th day of October, 2015.

HEDGER FRIEND, P.L.L.C.


By: /s/ Benjamin O. Rechtfertig
Attorney for Defendant

**CERTIFICATE OF COMPLIANCE**

Pursuant to D. Mont. Local Rule 7.1(d)(2)(E), I certify that this brief

complies with the word limits set out in that rule. Excluding the caption, certificate

of service and compliance, table of contents and authorities, and exhibit index, and

based on the count provided by counsel's word-processing system, this brief

contains 6,494 words.

October 16, 2015                              /s/ Benjamin O. Rechtfertig____


**CERTIFICATE OF SERVICE**

I, the undersigned, a representative of the law firm of Hedger Friend, P.L.L.C., hereby certify that I served a true and complete copy of the foregoing **"DEFENDANT BNSF'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO COMPEL"** on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.   Clerk, U.S. District Court

2.   William G. Jungbauer
     YAEGER & JUNGBAUER BARRISTERS, PLC
     4601 Weston Woods Way
     St. Paul, MN 55127-6356


DATE: <u>October 16, 2015</u>          <u>  /s/ Benjamin O. Rechtfertig          </u>

**EXHIBIT INDEX**

Pursuant to D. Mont. L.R. 7.1(d)(2)(C), the following exhibits are attached to this brief:

Exhibit A – Declaration of Benjamin O. Rechtfertig, October 16, 2015

Exhibit B – Declaration of Benjamin O. Rechtfertig, August 11, 2015

Exhibit C – Discipline letters

Exhibit D – Investigation Worksheet – Conn Moler

Exhibit E – Investigation Worksheet – Jason Maser

Exhibit F – Deposition transcript of Joe Heenan

Exhibit G – Deposition transcript of Ross Molyneaux

Exhibit H – Deposition transcript of Mark Williams

Exhibit I – Deposition transcript of James Hurlburt

Exhibit J – *Heim v. BNSF Railway Co.,* 2014 U.S. Dist. LEXIS 171009

Exhibit K – *Jones v. Union Pac. RR Co.,* 2015 U.S. Dist. LEXIS 97327

Exhibit L – *Monohon v. BNSF*, 4:14-CV-003050JAJ-SBJ (S.D. Iowa)

Exhibit M – Notes of Roger Galland – April 2, 2012

Exhibit N – Train Activity Report – April 2, 2012

Exhibit O – Deposition transcript of Conn Moler