IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DAVID BREWER,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>Defendant. | CV 14-65-GF-BMM-JTJ<br><br>**FINDINGS AND RECOMMENDATION** |

## I.  BACKGROUND

On September 10, 2014, Plaintiff David Brewer ("Mr. Brewer") filed a Complaint alleging that Defendant BNSF Railway Company ("BNSF") wrongfully terminated his employment on or about December 17, 2012, in retaliation for his engaging in a protected activity, in violation of 49 U.S.C. § 20109, and that BNSF hindered or interfered with Mr. Brewer's record supporting termination, in violation of Mont. Code Ann. § 39-2-703.  (Doc. 1).  The parties in this action have

1

undergone extensive motions practice, mostly related to the discovery of BNSF's electronically stored information ("ESI"). On February 14, 2018, the District Court ordered that Mr. Brewer's most recent Amended and Renewed Motion to Permit Discovery and Compel Production of Noncustodial ESI be denied. (Doc. 280).

On January 12, 2018, Mr. Brewer filed the instant Motion for Discovery Sanctions Pursuant to Fed. R. Civ. P. 37. (Doc. 261). The motion argues in sum that BNSF intentionally and purposefully destroyed or otherwise spoliated evidence related to Mr. Brewer's claims, and requests that the Court enter judgment in his favor as a sanction for BNSF's conduct. On January 26, 2018, BNSF filed its Brief in Opposition to Plaintiff's Motion for Discovery Sanctions. (Doc. 265). Mr. Brewer filed his Reply brief on February 9, 2018. (Doc. 274). The motion has been fully briefed and is ripe for adjudication.

## II.  LEGAL STANDARD

According to Federal Rule of Civil Procedure 37(e), a court may sanction a party who fails to preserve ESI:

> If electronically stored information is lost because a party failed to take reasonable steps to preserve stored information that should have been preserved in the anticipation or conduct of litigation rve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may

>order measures no greater than necessary to cure the prejudice; or
>
>(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>>(A) presume that the lost information was unfavorable to the party;
>>
>>(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>>(C) dismiss the action or enter a default judgment.

While a party may destroy evidence in the ordinary course of business based on its document retention policies, such destruction is prohibited if the party is "on notice" of potential litigation. *United States v. Kitsap Physicians Serv.*, 314 P.3d 995, 1001 (9th Cir. 2002).

Generally, three types of sanctions exist for the spoliation of evidence: (1) judgment against the party who is responsible for the spoliation; (2) the exclusion of evidence or witness testimony corresponding to the evidence destroyed; or (3) an adverse jury instruction. *Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 499-500 (E.D. Cal. 2010) (citing various opinions by the Ninth Circuit, Seventh Circuit, and United States Supreme Court). Sanctions may only be imposed if "a party knew, or reasonably should have known, that the spoliated evidence was potentially relevant to a claim." *Peschel v. City of Missoula*, 664 F.Supp.2d 1137, 1141 (D. Mont. 2009) (citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.

1993)).

Importantly, the most drastic sanction of default judgment requires a court to find "willfulness, fault, or bad faith" on the part of the party who destroyed the evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). Judgment in favor of the non-spoliating party may also be appropriate if the destruction of the evidence "relates to the matters in controversy in such a way as to interfere with the rightful decision of the case." *United States v. Natl. Med. Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986) (citations omitted). In determining whether a dispositive sanction is appropriate under Rule 37, a court should consider the factors set out by the Ninth Circuit:

(1)  the public's interest in expeditious resolution of litigation;

(2)  the court's need to manage its dockets;

(3)  the risk of prejudice to the party seeking sanctions;

(4)  the public policy favoring disposition of cases on their merits; and

(5)  the availability of less drastic sanctions.

*Leon*, 464 F.3d at 958 (citing *Anheuser-Busch*, 69 F.3d at 348). A court need not make specific findings as to each factor. *Id.* (citing *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir.1988)),

## III.  ANALYSIS

The gravamen of Mr. Brewer's motion is that BNSF had a duty to preserve relevant ESI and failed to do so, either in failing to "migrate" its emails from one server to another, or by not retaining specific devices from current and former employees, which may have had non-duplicative ESI saved on the device itself. (Doc. 262 at 4-8).

> BNSF testified in a written deposition as to its litigation hold process:
>
> During 1999 to the fall of 2013 when BNSF used a Microsoft Exchange server, BNSF did not use any application to place e-mail communications on mailbox hold, litigation hold or in-house hold or otherwise accept e-mail communications from BNSF's routine record retention process. . . . [L]itigation hold e-mails have been sent to custodians involved in litigation instructing them to search and hold e-mail communications related to the case for which they received a hold. Under BNSF's process such hold should also have the effect of designating the computers of recipients subject to being retained instead of re-formatted or placed back in circulation when updates were provided or when the person subject to the hold no longer used the computer.

(Doc. 262-3 at 21:8-21).  Mr. Brewer contends that BNSF, despite its own "process" of designating computers subject to re-formatting and preserving them, failed to do so.  In BNSF's own testimony, it stated that "[o]ther than the litigation hold order issued by BNSF's law department which instructed relevant employees to search their computers, e-mails and files for responsive records and/or information and preserve and collect the same, BNSF did not conduct a search of

5

any device of the BNSF employees listed." (*Id.* at 26:12-17). Due to this failure, Mr. Brewer argues, "it is lost to the plaintiff to prove his claims or dispute [BNSF's] asserted defenses." (Doc. 262 at 7).

**A. Notice**

The first inquiry under Rule 37(e) is whether the ESI should have been preserved in anticipation of litigation because a party failed to take reasonable steps to preserve it, and whether the ESI can be restored or replaced through additional discovery. As stated above, Mr. Brewer was terminated by BSNF on or about December 17, 2012. Mr. Brewer contends that BNSF was on notice of litigation no later than when he filed his complaint with OSHA on February 19, 2013, as evidenced by their response filed on June 14, 2013. (Docs 262-1 and 262-2). Mr. Brewer officially filed his Complaint against BNSF on September 10, 2014. (Doc. 1).

BNSF does not argue that it was not on notice of litigation before February of 2013. Additionally, BNSF concedes that it is not possible to restore or replace this ESI though additional discovery. (*See* Doc. 262-3 at 27:12-23). Therefore, the Court finds that Mr. Brewer has met the first element of a Rule 37(e) motion, and that BNSF needed to preserve relevant ESI in anticipation of litigation as of February of 2013.

B.     **Prejudice**

Once the party seeking sanctions demonstrates that the other party was on notice of litigation and failed to preserve ESI, the next inquiry is whether that party can show that it has suffered prejudice from the loss of information.  Fed. R. Civ. P. 37(e)(1).  Upon a finding of prejudice, the court "may order measures no greater than necessary to cure the prejudice."  *Id.*  In determining the amount of prejudice suffered by a party's failure to preserve ESI, the court "looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case."  *Leon*, 464 F.3d at 959 (quoting *Wiltec Guam*, 857 F.2d at 604).

The Court finds the Ninth Circuit case *Leon v. IDX Systems Corp.* to be instructive on when a dispositive sanction is appropriate.  April 30, 2003, Defendant IDX Systems Corporation ("IDX") sent Plaintiff Leon a letter specifically warning him to "ensure that no data on the [IDX-issued] laptop is lost or corrupted so as to avoid any possible despoliation of evidence."  *Leon*, 464 F.3d at 956.  When Leon returned the computer in February of 2004, a forensic analysis concluded that over 2,200 files had been deleted and intentionally written over.  *Id.*  Leon admitted that after April of 2003, he deleted "entire directories of personnel files" and also "wrote a program to 'wipe' any deleted files from the unallocated

7

space in the hard drive" just one week before returning the laptop to IDX. *Id*. The district court was able to identify some of the relevant documents Leon deleted and found that his intentional deleting and wiping of documents was done in bad faith and greatly prejudiced IDX's ability to try its case. *Id.* at 959-60. The Ninth Circuit affirmed the district court's decision to dismiss with prejudice Leon's claim against his employer because of his "very egregious" spoliation. *Id*. at 956.

In the light of *Leon*, it is clear that the alleged spoliation in this case does not warrant a default sanction. For example, BNSF points out that Mr. Brewer's brief still does not indicate "exactly what specific information he believes has been wrongfully withheld or not preserved." (Doc. 265 at 1-2). In *Leon*, IDX was able to calculate that over 2,200 files had been deleted, and even identified one of the documents as "SAGE_assessment_Key strategic issues.doc," noting that Leon's complaint directly involved IDX's "SAGE" program. *Leon*, 464 F.3d at 960, n.6. As counsel for Mr. Brewer stated at hearing, "I want to know what [the sources of ESI] are and what their capabilities are . . . so we can decide issues of whether or not they have met their preservation obligation." (Doc. 231 at 11:1-9). Mr. Brewer seems to argue that failing to meet a preservation obligation is in itself so prejudicial that dispositive sanctions are the only appropriate remedy: "Due to the railroad's admitted failure to preserve this evidence, it is lost to the plaintiff to

8

prove his claims or dispute the railroad's asserted defenses." (Doc. 262 at 7). However, Mr. Brewer has not shown with any specificity that relevant documents are missing or being withheld, and therefore cannot demonstrate to the Court the actual prejudice, if any, he would suffer.

Mr. Brewer points to the deposition of BNSF's trainmaster, Connan Moler, as a specific example of BNSF's failure to preserve ESI.

> Q: Now, you told us earlier that when you were talking about the computer issues that you had a laptop. When you left, did you turn that laptop into BNSF
> A: I left it sitting on the desk.
> Q: And did you have a Blackberry or a company phone when you worked at BNSF?
> A: Yeah.
> Q: Did you leave that with the company also?
> A: Absolutely. Didn't want any part of it.
> Q: Did you delete anything from either your Blackberry or your computer before you left?
> A: No, sir.
> Q: So whatever files or e-mails or whatever else you had on that computer and that Blackberry would have still been there when you left?
> A: Yes.

(Doc. 262-4 at 130:14-131:5). Mr. Brewer argues that "Moler's laptop may be the only remaining source of ESI for documents and saved e-mails, and given the short e-mail retention policy, his BlackBerry mobile device may be the only source for e-mail he forgot to save to his laptop's hard drive." (Doc. 262 at 6). Here, however, Mr. Brewer is speculating not only in that there "may" be ESI on those

9

devices beyond what BNSF has already produced, but Mr. Brewer also presumes that Mr. Moler "forgot to save" e-mails from his BlackBerry onto his laptop. While it is true that "[m]obile device e-mail is not necessarily duplicative" (Doc. 262-5 at ¶17), Mr. Brewer is speculating that there must be something on the BlackBerry which did not transfer over. However, Mr. Moler testified in his deposition that he sent *all* of the emails he had in response to BNSF's litigation hold and that he complied with BNSF's record retention policy. (Doc. 262-4 at 131:6-132:14). Therefore, Mr. Brewer has not shown how the ESI he presumes is missing will prevent him from going to trial or threaten to interfere with the rightful outcome of the case.

Furthermore, Mr. Brewer's claim of prejudice as to Mr. Moler's laptop and BlackBerry is also ineffective because the Court has previously ruled that Mr. Moler's devices are beyond the scope of discovery. In his September 30, 2015 Motion for Order to Compel, Mr. Brewer raised the same argument that Mr. Moler's devices would have "highly relevant information related to Brewer's discipline, train velocity and other company metrics, and emails regarding the town hall meeting." (Doc. 51 at 23-24). The Court denied this motion, stating that Mr. Brewer "had not identified any ESI on any of these devices that BNSF has not already provided to him" and is "overly broad." (Doc. 81 at 22). Therefore,

10

because this information was ruled not discoverable, it is not ESI which "should have been preserved in the anticipation or conduct of litigation" and cannot have prejudiced Mr. Brewer. Fed. R. Civ. P. 37(e).

The Court is aware that proving that ESI was spoliated is difficult because "[b]y its nature, spoliation is invisible." *Spotted Horse v. BNSF Ry. Co.*, 350 P.3d 52, 61 (Mont. 2015) (citation omitted). However, without some showing of what is missing, as exemplified by *Leon*, the Court is unable to determine how much prejudice, if any, to attribute to BNSF's actions. Therefore, the Court finds that Mr. Brewer has not shown that he has suffered prejudice so great as to amount necessitate a default sanction.

### C. Intent

Rule 37(e)(2) also provides authority for a court to grant more drastic sanctions "only upon a finding that the party acted with the intent to deprive another party" of the ESI's use. Upon such a finding, a court may: (1) presume that the ESI was unfavorable, (2) instruct the jury that it may or must presume the ESI was unfavorable, or (3) grant default judgment. *Id.*

Mr. Brewer argues that BNSF's failure to preserve its ESI was done with the intent to deprive him of that information. Mr. Brewer contends that despite BNSF's capability to use its "highly sophisticated, world-class platform" to

11

preserve relevant evidence, it "inexplicably . . . failed to utilize these considerable tools, leaving it up to the individual custodians to search mailboxes and ESI without any training or guidance." (Doc. 262 at 9). That failure, Mr. Brewer argues, "constitutes intentional and prejudicial deprivation of the information for plaintiff's use in this litigation." (*Id*.) Mr. Brewer's digital forensics expert, John Carney, states that BNSF's "failure to preserve unique ESI evidence demonstrates its intent to deprive [Mr. Brewer] of the information's use in litigation to prove his claims and defenses." (Doc. 262-5 at ¶18).

Again, when comparing this action to *Leon*, it is difficult to see the requisite intent in BNSF's actions which would necessitate a default sanction. Mr. Brewer himself concedes that BNSF's misconduct may be "reckless, negligent, or deliberate," but argues that regardless, the Court should impose the same sanction "commensurate with the significance of [BNSF's] actions." (Doc. 262 at 2 (citation omitted)). However, the language of the rule says that depriving another party of ESI must be *intentional*. According to the Advisory Committee notes, a court needs more than gross negligence to grant even an adverse inference instruction:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even

> grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

*Equal Employment Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 966 (10th Cir. 2017) (quoting Fed. R. Civ. P. 37 (Advisory Committee Note to Subdivision (e)(2) (2015 Amendment))). Accordingly, the Court finds that Mr. Brewer has failed to show the requisite intent by BNSF by which a default sanction would be appropriate.

### D. Lesser sanctions

When determining the appropriate sanction for spoliation of evidence, a court should impose "the least onerous effective sanction." *In re Napster, Inc. Copy. Litig.*, 462 F.Supp.2d 1060, 1074 (N.D. Cal. 2006).

The parties do not address lesser sanctions in their briefing. Mr. Brewer asks that the Court sanction BNSF "by entering judgment in his favor, or in the alternative, imposing the highest sanction which the Court finds warranted." (Doc. 262 at 9-10). On the other hand, BNSF insists that no sanction is necessary because it "cannot be sanctioned for a failure to comply with production requests for information that this Court has previously ruled it had no obligation under the

law to produce." (Doc. 265 at 1).[1]

The Court finds that Mr. Brewer has not shown what, if any, prejudice he has suffered, and therefore the Court is unable to determine the amount of prejudice he has suffered so as to order curative measures. Fed. R. Civ. P. 37(e)(1). The Court also finds that Mr. Brewer has not shown the requisite intent by BNSF to require a sanction under subsection (e)(2). Therefore, the Court recommends that the district court not impose sanction at this time, but reserve its ruling as to a lesser sanction until trial to see how the evidence is presented. In any event, the Court recommends that the ultimate sanction of default judgment in favor of Mr. Brewer not be granted.

## IV. FINDINGS AND RECOMMENDATION

The Court **FINDS**:

1. BNSF should have reasonably anticipated litigation and taken reasonable steps to preserve relevant ESI as of February of 2013.

2. There is no finding of prejudice on behalf of Mr. Brewer so as to require curative measures under Rule 37(e)(1).

3. There is no finding of an intent to deprive Mr. Brewer of relevant ESI so as to require sanctions under Rule 37(e)(2).

---

[1] BNSF argues that it should not be sanctioned for failure to follow a discovery order because it has complied with the Court's orders. (Doc. 265 at 6); *see* Fed. R. Civ. P. 37(b) ("Failure to Comply with a Court Order"). However, Mr. Brewer makes his motion is pursuant to Rule 37(e) ("Failure to Preserve Electronically Stored Information"). (Doc. 262 at 3).

The Court **RECOMMENDS:**

Mr. Brewer's Motion for Discovery Sanctions (Doc. 261) be denied.

DATED this 27th day of February, 2018.

_____
John Johnston
United States Magistrate Judge